IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Justin M. Follmer and Francesca N. Disalvo-Follmer, | ) ) ) C/A. No. 2:22-743-RMG |
| Plaintiffs, | ) ) |
| v. | ) ) **ORDER AND OPINION** |
| Pro Sports, Inc., d/b/a/ Champion Sports, | ) ) |
| Defendant. | ) ) ) |

Before the Court is Defendant's motion to exclude the opinions of Harvey Voris (Dkt. No. 38). For the reasons set forth below, the Court denies the motion.

**I.    Background**

Plaintiff Justin M. Follmer ("Plaintiff") alleges that, on February 10, 2020, while at Black Flag gym on John's Island, South Carolina, he attempted to jump over an Adjustable Training Hurdle (the "hurdle") manufactured by Defendant and bought by Black Flag gym on Amazon. (Dkt. No. 1-1 at 4-5); (Dkt. No. 48 at 6). The hurdle was set to its highest setting of 42 inches. (Dkt. No. 48 at 5). Follmer allegedly did not clear the hurdle, instead knocking off the white board and impaling his rectum on the metal legs of the hurdle. (*Id.*). Follmer alleges he suffered serious injuries because of the incident.

Plaintiff brings claims for (1) Negligence—Product Defect; (2) Strictly Liability; (3) Breach of Warranty; and (4) Loss of Consortium. (Dkt. No. 1-1 at 6-8).

Defendant moves to exclude the testimony of Plaintiff's expert Harvey Voris. (Dkt. No. 38). Defendant argues Voris's opinions are unreliable and fail to assist the trier of fact because

"(1) Mr. Voris failed to test the product in the manner in which the product would be used and in which the accident occurred; (2) he failed to conduct a meaningful risk-utility analysis; (3) he failed to consider hazards created by his proposed alternative design; and (4) because he cherry-picked data to support his opinions." Defendant also argues Voris's "warnings opinions should be excluded because (1) he is not qualified to opine on warning efficacy; (2) his proposed warnings have not been tested; and (3) no other products in this class have the on-product warning that he proposes." (Dkt. No. 38-1 at 1). Plaintiff opposes. (Dkt. No. 48). Defendant filed a reply. (Dkt. No. 52).

Defendant's motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

Under Fed. R. Evid. 702, the Court acts as a gatekeeper "to verify that expert testimony is based on sufficient facts or data." *E.E.O.C. v. Freeman*, 778 F.3d 463, 472 (4th Cir. 2015). The expert testimony must be shown to be "not only relevant, but reliable." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993). "Because expert witnesses have the potential to be both powerful and quite misleading, it is crucial that the district court conduct a careful analysis into the reliability of the expert's proposed opinions." *United States v. Fultz*, 591 Fed. Appx. 226, 227 (4th Cir. 2015).

The trial court must ensure that (1) "the testimony is the product of reliable principles and methods," (2) the "expert has reliably applied the principles and methods to the facts of the case," and (3) the "testimony is based on sufficient facts and data." Fed. R. Evid. 702(b), (c), (d). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid," *Daubert*, 509 U.S. at 592-93, and whether the expert has "faithfully appl[ied] the methodology to the facts." *Roche v. Lincoln Prop. Co.*, 175 Fed. Appx.

2

592, 602 (4th Cir. 2006). Additionally, the Court must evaluate any proposed expert testimony under the standards of Fed. R. Evid. 403 to determine whether the probative value of the evidence, if relevant, is substantially outweighed by the risk of misleading or confusing the jury.

Factors to be considered in assessing the reliability of technical or scientific evidence include "whether a theory or technique ... can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," the "known or potential rate of error," the "existence and maintenance of standards controlling the technique's operations," and whether the theory or technique has garnered "general acceptance." *Daubert*, 509 U.S. at 593–94. The *Daubert* factors are not exhaustive and illustrate the type of factors "that will bear on the inquiry." *United States v. Hassan*, 742 F.3d 104, 130 (4th Cir. 2014). Courts have also considered whether the "expert developed his opinions expressly for the purposes of testifying or through research conducted independent of litigation." *Wehling v. Sandoz Pharm. Corp.*, 162 F.3d 1158 at *3 (4th Cir. 1998); *Daubert v. Merrell Dow Pharm. Inc.*, 113 F.3d 1311, 1317 (9th Cir. 1995) (on remand).

The proponent of the expert testimony carries the burden to establish the admissibility of the testimony by a preponderance of the evidence. *Cooper v. Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). The Fourth Circuit has held that Rule 702 excludes expert testimony on matters within the common knowledge of jurors. *Persinger v. Norfolk & W. R. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990); Rule 702 (requiring that an admissible expert opinion be based upon "scientific, technical, or other specialized knowledge"); *Scott v. Sears, Roebuck, & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986) (noting by negative implication that "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."). The admission of "common sense" expert testimony is

3

dangerous because "the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense." *Id.*

### III.  Discussion

Regarding Voris's design defect opinions, Defendant's principle argument for excluding Voris's testimony is that Voris's "downward vertical load testing" is unreliable because it "does not simulate the forces exerted by a user, like Plaintiff during . . . plyometric training." (Dkt. No. 38-1 at 14). Specifically, Voris used a Nidec force gauge to measure how much "downward" force Defendant's hurdle could withstand before collapsing. (*Id.*).  Defendant argues, however, that Voris's test was unreliable because Voris did not apply lateral forces such as those Plaintiff would have made while attempting to jump forward and over the hurdle on the day of the accident. (*Id.* at 15-16).

The Court rejects Defendant's argument on this point. The Fourth Circuit has held that expert testimony may be excluded if an expert's opinions are "based upon the result of tests which were conducted under *such different circumstances than those obtaining at the time of the accident complained of* as to make the results 'largely irrelevant.'" *Chase v. Gen. Motors Corp.*, 856 F.2d 17, 20 (4th Cir. 1988) (emphasis added).  Such is not the case here. Rather, based off witness testimony, the observed deformation of one of the hurdle's legs, the amount of force required to deform the hurdle leg put forth by Defendant's expert, and the estimated amount of torque involved in deforming the leg, Voris estimated the angle and trajectory of Plaintiff's jump over the hurdle. (Dkt. No. 48 at 22-23) (diagraming Voris's calculations and concluding Plaintiff's "trajectory resulted in impalement and bending of the hurdle").  Voris further tested the hurdle to determine the amount of downward force need to cause its collapse at its 42-inch setting. (Dkt. No. 48-12 at 11). While Defendant argues that Voris failed to estimate for lateral forces, Defendant fails to

4

acknowledge the theory behind Voris's hypothesis, namely that the "Champion hurdle will [] support the vertical loads necessary to penetrate a user's rectum under . . . circumstances substantially similar to those encountered by" Plaintiff on the day of the accident. (Dkt. No. 48 at 21). Relatedly, Defendant does not dispute that its *own* expert acknowledged that the "sequence of events during the incident is unknown" and opined that "force required to collapse a typical adjustable hurdle is not repeatable, is dependent on load direction, and is highly variable." (Dkt. No. 48-19 at 5). At bottom, Defendant attempts to hold Plaintiff to an impossible standard and, more fundamentally, fails to show how Voris's analysis was conducted under circumstances so different than those alleged to have caused Plaintiff's accident that his opinions are "irrelevant." Accordingly, Defendant's motion is denied on this point.

Next, Defendant argues that Voris's design defect opinion must be excluded because Voris failed to perform a "meaningful risk-utility analysis" as required by South Carolina law. (Dkt. No. 38-1 at 19-16).

In a products liability design case, the exclusive test is the risk-utility balancing test, with its requirement of showing a feasible alternative design. *Branham v. Ford Motor Co.*, 390 S.C. 203, 220 (2010); *Id.* at 225 n.16 ("The analysis asks the trier of fact to determine whether the potential increased price of the product (if any), the potential decrease in the functioning (or utility) of the product (if any), and the potential increase in other safety concerns (if any) associated with the proffered alternative design are worth the benefits that will inhere in the proposed alternative design.").

The Court denies Defendant's motion on this point. To the extent Defendant argues Voris's opinions are unreliable because he did not perform a statistical analysis of impalement injuries, Defendant cites no case law requiring plaintiff's expert put forth such evidence to render his

5

opinions admissible. And *Branham*, discussed above, imposes no such requirement. *Id.* Defendant is correct that Plaintiff cannot use the sole fact he was injured to prove Defendant's hurdle was defective. (Dkt. No. 38-1 at 23). Voris, however, does no such thing. *See generally* (Dkt. No. 38-7). Contrary to the report excluded by the Fourth Circuit in *Nease v. Ford Motor Co.*, 848 F.3d 219, 234 (4th Cir. 2017) (excluding alternative design opinion where expert performed "no tests or studies to determine" whether alternative designs were safer), Voris performed testing on a modified version of the hurdle to conclude an alternative, safer design was feasible, (Dkt. No. 38-7 at 7-11). *Branham*, 390 S.C. at 225 ("In sum, in a product liability design defect action, the plaintiff must present evidence of a reasonable alternative design. The plaintiff will be required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous. This presentation of an alternative design must include consideration of the costs, safety and functionality associated with the alternative design.").

Accordingly, the Court denies Defendant's motion on this point.

Defendant further argues that because Voris did not evaluate, in relation to his alternative design, "additional hazards, especially in the track and field context," the Court must exclude Voris's opinions as unreliable. (Dkt. No. 38-1 at 27) (arguing Voris failed to consider the hazard a fallen crossbar might cause a runner but simultaneously citing Voris's testimony that hurdles such as Defendant's, where the crossbar can fall off, should not be used for competitions); (Dkt. No. 38-6 at 22). The Court rejects Defendant's argument on this point. As just noted, Voris does consider and balance the potential hazards created by his alternative design in the context of athletic training. Further, it is undisputed that Voris's alternative design is based on the Gill Versa

6

hurdle, a hurdle already on the market. In *Wickersham v. Ford Motor Co.*, 194 F. Supp. 3d 434, 439 (D.S.C. 2016), the Court rejected a similar argument, stating that:

> To the extent Ford argues that plaintiff can only prevail if it provides an actual algorithm that Ford could have used in the 2010 Escape, Ford seeks to impose an evidentiary burden well above any sensible interpretation of *Branham*. The *Branham* court relied on the Restatement (Third) of Torts in adopting the risk-utility test for design defects. *See Branham*, 701 S.E.2d at 14 ("The third edition [of the Restatement of Torts] effectively moved away from the consumer expectations test for design defects, and towards a risk-utility test. We believe the Legislature's foresight in looking to the American Law Institute for guidance in this area is instructive."). In applying the alternative design requirement of the risk-utility test, the Restatement (Third) of Torts
>
> > does not [ ] require the plaintiff to produce a prototype in order to make out a prima facie case. Thus, qualified expert testimony on the issue suffices, even though the expert has produced no prototype, if it reasonably supports the conclusion that a reasonable alternative design could have been practically adopted at the time of sale.
>
> Restatement (Third) of Torts: Prod. Liab. § 2, cmt. d (Am. Law Inst. 1998).
>
> *The fact that other manufacturers successfully implemented the raised threshold approach provides more than a reasonable basis for concluding that Ford could have done the same here. Other courts in this district have adopted a similar analysis in applying South Carolina law.*

*See, e.g., Quinton v. Toyota Motor Corp.*, No. 1:10–cv–02187, 2013 WL 1680555, at *3 (D.S.C. Apr. 17, 2013) (denying summary judgment on the basis of documentary evidence and deposition testimony suggesting the existence of a feasible alternative design, with no mention of such a design ever having been produced); *Little v. Brown & Williamson Tobacco Corp.*, 243 F.Supp.2d 480, 496 (D.S.C.2001) (denying summary judgment where plaintiff "provided an affidavit by Dr. Farone suggesting numerous technologies which in his opinion could have been utilized by Defendants to provide a safer cigarette since the early 1960's at the latest"). As to Defendant's argument regarding the hurdle's use in competitive track and field events and Voris's "failure" to consider hazards his alternative design might pose in such situation, such an argument goes to the

weight of Voris's testimony, especially given Plaintiff has put forth substantial evidence that Defendant's hurdle is "outside the scope of and not subject to USATF, NCAA, OR NFHS standards and rules." (Dkt. No. 48 at 10) (noting the hurdle's design violates applicable standards for use in competitive settings and therefore cannot be used). Considering the, the Court denies Defendant's motion on this point.

Last, Defendant argues Voris's opinions must be excluded because he failed to consider "the foreseeability of a user tightening the pivot bolt on his alternative design, which would prevent it from collapsing" and "cherry-picked data." (Dkt. No. 38-1 at 29-29). The Court rejects these finals arguments. Defendant cites no case law for the proposition that an expert must consider customer misuse or alterations in rendering an opinion on an alternative design and the Court declines to exclude Voris's opinions on such a basis. As to "cherry-picking" data, "cherry-picking data produces a misleadingly favorable result by looking only to 'good' outcomes." *E.E.O.C. v. Freeman*, 778 F.3d 463, 470 (4th Cir. 2015) (Agee J. concurring). Here, Defendant criticizes Voris for performing physical tests on just one competitor hurdle before rendering the opinions in his report. (Dkt. No. 38-7 at 5) (finding that when the bar is knocked off the Power Max hurdle it collapses and basing Voris's alternative design hurdle off the Power Max hurdle). Defendant ignores, however, that this does not constitute "cherry-picking" data in the common sense of the term. *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 524 F.Supp.2d 1166, 1176 (N.D.Cal.2007) (excluding expert testimony where expert "reaches his opinion by first identifying his conclusion ... and then cherry-picking observational studies that support his conclusion and rejecting or ignoring the great weight of the evidence that contradicts his conclusion"). Rather, Voris tested Defendant's hurdle, found evidence which led him to believe it was defectively designed, and designed and tested an alternative design based on products

8

already on the market. Defendant's argument equivocates on the meaning of the term "cherry-picking" and the Court reject's this final argument as to Voris's design defect opinions.

The Court now addresses Defendant's arguments as to Voris's warning opinions.

First, to the extent Defendant argues Voris is not qualified to opine on warning efficacy, (Dkt. No. 38-1 at 12), the Court rejects the argument. Defendant admits Voris has "created and placed warnings on products for 42 years." (*Id.* 12); (Dkt. No. 38-7 at 18) (Voris C.V. noting he worked for 35 years at Paramount Fitness Corporation and was responsible for "testing, engineering documentation, warnings development and quality control" and worked on "approximately 2000 fitness products"); (Dkt. No. 48-17 at 19) (Voris testimony that he authored ASTM F1749, a voluntary "Standard Specification for Fitness Equipment and Fitness Facility Safety Signage and Labels"). Clearly, Voris's "knowledge . . . [and] experience" with warnings qualifies him as an expert in the field. Fed. R. Evid. 702. Defendant cites no case law for the proposition that because Voris did not collect "data to support whether the warnings he has created" during his career are effective he is not qualified to offer opinions in this matter. Such a critique goes to the weight of Voris's testimony and is best addressed through cross-examination at trial. Accordingly, the Court rejects the argument.

Second, Defendant argues Voris's warnings opinions should be excluded because he failed to test them for effectiveness. (Dkt. No. 36-1 at 32). The Court rejects Defendant's argument. *See, e.g.*, *Hickerson v. Yamaha Motor Corp.*, No. 8:13-CV-02311-JMC, 2016 WL 4123865, at *4 (D.S.C. July 29, 2016) ("It is not evident that a warnings experts' testing of a proposed alternative warning system is a brightline requirement for a court to deem the opinion reliable under *Daubert*"); *Thomas v. Bombardier Recreational Prods, Inc.*, 2010 WL 4188308, at *6 (M.D. Fla. 2010) (citations omitted) (concluding that under appellate precedent, the parties were "incorrect in

9

arguing that an expert cannot be allowed to testify without testing [the expert opinions of warnings placement on a personal watercraft]" and further stating that "[a]n expert may testify to an opinion which is based on experience, training, or education, and not upon the scientific method, if the Court finds the opinion sufficiently reliable"); *Jaurequi v. John Deere Co.*, 971 F. Supp. 416, 428-29 (E.D. Mo. 1997) (concluding, under review for summary judgment, that the expert opinion met *Daubert*'s reliability requirements despite the expert's statement that "he had done no testing as to whether any of his suggested warnings would have changed the plaintiff's behavior or prevented the accident").  The cases Defendant cites for the proposition a failure to warn opinion must be *per se* excluded if not tested state no such thing. Rather, said cases excluded certain opinions because they were based solely on the purported expert's *ipse dixit* or otherwise devoid of an objective factual basis. *See Sardis v. Overhead Door Corp.*, 10 F.4th 268, 296 (4th Cir. 2021) (warning opinions excluded where expert admitted he did not determine the exact language that should have been included and "pointed to no peer-reviewed literature, test data, *or* any other facts to support his claim that an unspecified warning placed on the Container would have been heeded by Mr. Sardis") (emphasis added); *Hickerson v. Yamaha Motor Corp.*, 882 F.3d 476, 481 (4th Cir. 2018) (upholding exclusion of expert's warning opinions where opinions were unsupported by "research, data or scientific theories"); *Dubois v. Flint Equip. Co.*, No. 2:20-CV-02029-JD, 2022 WL 17830611, at *5 (D.S.C. Nov. 9, 2022) (excluding purported warning testimony as unhelpful and because "Durig's training and experience as a mechanical engineer . . . are insufficient to establish he is qualified regarding the adequacy or the need for additional warning on the Loader"). Here, Voris's relies on peer-reviewed studies and national standards in his report while opining on the size, design, and placement of his proposed warnings. (Dkt. No. 48 at 12); (Dkt. No. 38-7 at 12-16). Voris also relies on the testimony developed in this case to form his opinions. (Dkt. No.

48-17 at 23-25). For the reasons stated above, the Court reject's Defendant's argument on this second point.

Third, Defendant argues Voris's warning opinions must be excluded because "no hurdle on the market uses Mr. Voris' proposed warnings." (Dkt. No. 38-1 at 34). At bottom, Defendant disputes Voris's contention that ANSI Z35 and ASTM F1749, voluntary labeling standards, are applicable to the hurdle. As Plaintiff correctly notes, Defendant "posits that since there are supposedly no relevant industry standards, including ANSI Z535 and ASTM F1749, and since the industry custom is not to include on-product warnings, Voris' opinions are inadmissible, as Champion is unlikely to be held liable for 'failing to do what others in the industry have also not done." (Dkt. No. 38-1 at 36).

The Court rejects Defendant's argument. ASTM F1749 arguably applies to the hurdle. *See* (Dkt. No. 38-15 § 1.1) (stating F1749 applies to "fitness equipment," defined as a "product designed for use in exercising specific or multiple muscle of the body"). Further, and more importantly, as stated in *Lees v. Carthage College*, it is apparent Defendant challenges little more than the weight a jury should give Voris's testimony:

> But the relevant question for admissibility purposes is not whether the IACLEA guidelines are controlling in the sense of an industry code, or even how persuasive they are. It is only whether consulting them is a methodologically sound practice on which to base an expert opinion in the context of this case. For a claim of this nature, we are convinced that it is. The IACLEA guidelines are an authoritative set of recommended practices specific to the field of campus security and are regularly consulted by campus-security professionals. The extent of Carthage's deviations from these practices may surely inform an expert opinion as to whether Carthage met its standard of care. Carthage may argue, of course, that the IACLEA guidelines are only advisory, or outdated, or overly general, and for those reasons should not be taken as persuasive on the standard of care. But that argument goes to the weight of the expert's testimony, not its admissibility. The district court abused its discretion in excluding this part of Dr. Kennedy's testimony.

714 F.3d 516, 525 (7th Cir. 2013). Thus, for the reasons stated above, including the reasoning articulated in *Lees*, the Court denies Defendant's motion on this third point.

As to Defendant's remaining arguments for excluding Voris's warning opinions, (Dkt. No. 38-1 at 37-42), the Court rejects them. Defendant contends that Voris "capitulated" a lack of on-product warnings made the hurdle only "deficient" not "defective." Defendant also contends that that Voris's testimony "confirms that the alleged defect has nothing to do with the lack of on-product warnings." (*Id.* at 38). The Court rejects both arguments as misrepresentations or equivocations regarding Voris's testimony and opinions. *See* (Dkt. No. 38-6 at 13) (testifying exercise products should have warnings on them, but that if one does not, Voris would qualify it as "deficient." Voris also opines, however, that the hurdle *in this case* was defective because "the placement of its central pivot bolt prevents the hurdle from collapsing" in its highest position *and* the hurled lacked warnings alerting users to said danger); Voris Supplemental Report, (Dkt. No. 48-22 at 4).

Accordingly, the Court denies Defendant's motion as to Voris's warning opinions.

### IV.     Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's motion to exclude the testimony of Harvey Voris. (Dkt. No. 38).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

June 12, 2023
Charleston, South Carolina